## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JILL HUFFORD,<br><br>        Plaintiff,<br><br>    v.<br><br>THE BANK OF FINCASTLE, GEORGE E. HOLT, III, CHARLES S. STEELE, GREGORY R. GERSACK, KIRTESH PATEL, JOHN W. RADER, JR., STEVEN W. SPICKARD, C. RAY SPRINKLE, and ROBERT C. WAGNER,<br><br>        Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Jill Hufford ("Plaintiff"), by her undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against The Bank of Fincastle ("Fincastle" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Fincastle, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed merger between Fincastle, First National Corporation ("First National"), and First Bank, a wholly-owned subsidiary of First National of which First National operates through ("Proposed Transaction").  Plaintiff also asserts a claim against the Individual

1

Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.     On February 18, 2021, Fincastle entered into an Agreement and Plan of Merger with First National and First Bank ("Merger Agreement"), whereby Fincastle will merge with and into First Bank, with First Bank surviving the merger.

3.     Upon consummation of the Proposed Transaction, each share of Fincastle will be converted into the right to receive: (i) $3.30 in cash; and (ii) 0.1649 shares of First National common stock ("Merger Consideration").

4.     On April 12, 2021, in order to convince the Company's public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement ("Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.     In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) the financial projections for Fincastle; (ii) the financial analyses performed by the Company's fairness advisor, RP Financial, LC ("RP") in connection with the Proposed Transaction; (iii) potential conflicts of interest in connection with the Proposed Transaction; and (iv) the process leading up to execution of the Merger Agreement.

6.     The Proposed Transaction is expected to close in the third quarter of 2021, so the special meeting of Fincastle's shareholders to vote on the Proposed Transaction is imminent ("Shareholder Vote").  Therefore, it is imperative that the material information omitted from the Registration Statement is disclosed prior to the Shareholder Vote, so Fincastle's shareholders can properly exercise their corporate voting rights.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Fincastle's shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Fincastle's common stock trades on the OTC Pink Open Market ("OTC"), which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347

F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## **PARTIES**

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Fincastle common stock.

12.     Defendant Fincastle is a Virginia state-chartered non-member bank with principal executive offices located at 17 South Roanoke Street, Fincastle, Virginia 24090.  The Company's common stock trades on the OTC under the ticker symbol "BFTL."

13.     Defendant George E. Holt, III is, and has been at all relevant times, a director of the Company and Chairman of the Board.

14.     Defendant Charles S. Steele, is, and has been at all relevant times, a director of the Company, President, and Chief Executive Officer.

15.     Defendant Gregory R. Gersack is, and has been at all relevant times, a director of the Company.

16.     Defendant Kirtesh Patel, RPh, MBA is, and has been at all relevant times, a director of the Company.

17.     Defendant John W. Rader, Jr. is, and has been at all relevant times, a director of the Company.

18.     Defendant Steven W. Spickard, is, and has been at all relevant times, a director of the Company.

19.     Defendant C. Ray Sprinkle is, and has been at all relevant times, a director of the Company.

20.     Defendant Robert C. Wagner is, and has been at all relevant times, a director of the Company.

21.    Defendants identified in paragraphs 13 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.    Background of Fincastle, First National, and the Proposed Transaction**

22.    Fincastle provides various banking products and services to individuals and businesses. It offers interest bearing and non-interest bearing checking, savings, money market, demand deposit, and individual retirement accounts, as well as certificates of deposit; and debit cards. The Company also provides personal, commercial, real estate mortgage, construction, home equity, consumer installment, real estate construction, residential and commercial real estate, and consumer loans; commercial lines of credit; overdraft line of credit; and credit cards. In addition, Fincastle offers money orders, official checks, safe deposit box facilities, wire transfers, overdraft protection, foreign currency exchange, merchant, ACH origination, check imaging, direct and mobile deposit, night depository, notary and medallion stamp, merchant credit card processing, payroll payment, and remote deposit capture services. Further, the Company engages in the ownership and sale of real estate; and title insurance business, as well as provides online, mobile, and telephone banking services. It operates through six full-service branches and one drive-through branch located in Botetourt County, as well as thirteen automated teller machine locations.

23.    First National operates as the bank holding company for First Bank that provides various commercial banking services to small and medium-sized businesses, individuals, estates, local governmental entities, and non-profit organizations in Virginia. First National's deposit products include checking, savings, money market, and individual retirement accounts, as well as certificates of deposit and treasury management solutions. Its loan products comprise construction

loans, including residential, land acquisition, and development loans; 1-4 family residential real estate loans; and commercial real estate loans that are secured by various types of commercial real estate, including multi-family residential buildings, office and retail buildings, hotels, industrial buildings, and religious facilities. In addition, First National provides wealth management services, including estate planning, investment management of assets, trustee under an agreement, trustee under a will, and estate settlement. Further, it offers title insurance and investment services; and holds other real estate owned and office sites, as well as provides internet and mobile banking, remote deposit capture, and other traditional banking services. It serves customers through 14 bank branch offices, a loan production office, and a customer service center, as well as through a network of ATMs.

24.   According to the February 18, 2021, joint press release announcing the Proposed Transaction:

### First National Corporation to Acquire The Bank of Fincastle

STRASBURG, Va. and FINCASTLE, Va., February 18, 2021 --- First National Corporation (the "Company" or "First National") (NASDAQ: FXNC), the bank holding company of First Bank ( "First Bank") and The Bank of Fincastle ("Fincastle") (OTCPK: BFTL) jointly announced today the signing of a definitive merger agreement.

Upon completion of the acquisition, the combined company is expected to have approximately $1.2 billion in assets, $868 million in loans, $1.0 billion in deposits and 20 branch offices across Virginia. First National expects the transaction to be approximately 10% accretive to earnings per share.

Commenting on the announcement, Scott Harvard, President and Chief Executive Officer of First National Corporation, said, "We are excited to be joining forces with another bank who has deep roots in their community, having begun operations in the Town of Fincastle in 1875. Together, our team of bankers will deliver unparalleled service to our customers and communities and continue to make those communities better places to live and work. With this combination, First Bank will extend its reach from the top of Virginia south down the I-81 corridor to Roanoke, ensuring our small and mid-sized Virginia markets continue to be served by an independent Virginia community bank."

First National will acquire Fincastle for a combination of stock and cash valued at approximately $3.09 per share for each share of Fincastle's common stock outstanding. Under the terms of the agreement, Fincastle shareholders could elect, for each share of Fincastle common stock, to receive 0.1649 shares of First National stock, or $3.30 in cash, or a combination of stock and cash, subject to election and proration such that the aggregate consideration will consist of 80 percent First National stock and 20 percent cash. Based on First National's closing stock price of $18.40 as of February 17, 2021, this equates to an aggregate deal value of approximately $31.6 million.

Founded in 1875, The Bank of Fincastle currently operates six banking locations in and around the Roanoke Metropolitan Statistical Area. As of December 31, 2020, Fincastle reported assets of $256 million, gross loans of $202 million and deposits of $224 million.

Scott Steele, President and Chief Executive Officer of Fincastle, stated, "I am enthusiastic about the opportunity we have to partner with First National in a transaction that we believe offers significant opportunities to our clients, communities, employees and shareholders. This partnership is an excellent opportunity to create value for both institutions."

The merger agreement has been unanimously approved by the boards of directors of each company. The transaction is expected to close in the third quarter of 2021, subject to approval of both companies' shareholders, regulatory approvals and other customary closing conditions.

First National and First Bank will appoint three Fincastle directors to join the existing eight legacy directors on each respective Board. Scott Steele, the President and Chief Executive Officer of Fincastle will join First Bank as the First Bank Regional President.

Piper Sandler & Co. served as financial advisor and Nelson Mullins Riley & Scarborough, LLP provided legal counsel to First National. Janney Montgomery Scott LLC served as financial advisor, RP Financial, LC served as fairness advisor, and Godfrey & Kahn, S.C. served as legal counsel to Fincastle.

(Emphasis in original).

## II.    The Registration Statement Omits Material Information

25.    Defendants filed a materially incomplete and misleading Registration Statement with the SEC, despite the Individual Defendants being obligated to carefully review the Registration Statement before it was filed and disseminated to the Company's shareholders, to

ensure it did not contain any material misrepresentations or omissions.  Therefore, the Registration Statement should be amended prior to the Shareholder Vote, so the Company's shareholders can make an informed voting decision in connection with the Proposed Transaction.

26.     First, the Registration Statement entirely omits projections for Fincastle, despite references to these projections throughout.  Indeed, the Registration Statement discloses that in August 2019, the Board reviewed "detailed financial projections for Fincastle, its projected asset growth over a five year period, and the estimated future value of Fincastle common stock." Further, RP states that it relied upon "financial forecasts, projections and other forward-looking information estimated by Fincastle and First National" in performing its fairness opinion.  Thus, the Company's intentional omission of these referenced projections for Fincastle renders the Registration Statement materially incomplete and misleading.  Fincastle's projections are imperative to the Company's shareholders because without them, the true value of Fincastle will be difficult to ascertain when evaluating the Proposed Transaction.

27.     Second, the Registration Statement omits material information regarding RP's financial analyses conducted for the Proposed Transaction.

28.     To start, for the *Comparable Transactions Analysis*, the Registration Statement fails to disclose the individual multiples observed for each of the selected transactions.

29.     Similarly, for RP's *Control Premium Analysis*, the Registration Statement omits the individual multiples observed for each of the thirteen selected public banking companies.

30.     Regarding the *Discounted Cash Flow Analysis* for Fincastle, the Registration Statement does not disclose the following information: (i) the inputs and assumptions underlying RP's application of control terminal value multipliers of 18.0 to 22.0 times to year 5 earnings per share, and application of 1.00 times to 1.40 times to year 5 tangible book value per share; and (ii)

the inputs underlying the capital asset pricing model used to derive the range of discount rates from 10% to 13%.

31.    These key inputs are material to Fincastle's shareholders, and their omission renders the summary of RP's *Discounted Cash Flow Analysis* incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, Fincastle's shareholders cannot evaluate for themselves the reliability of RP's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of Fincastle or were the result of an unreasonable judgment by RP, and make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction.

32.     With respect to the *Pro Forma Impact Analysis*, the Registration Statement omits the inputs and assumptions underlying RP's estimate of the merger to be approximately 4.0% dilutive to First National's tangible book value per share.

33.     Third, the Registration Statement fails to disclose information regarding potential conflicts of interest in connection with the Proposed Transaction.

34.     The Registration Statement provides that in the summer of 2019, RP assisted the Board and the Company's management in evaluating Fincastle's strategic plan during a planning retreat, yet the Registration Statement omits the fees received by RP for rendering that service.

35.     Moreover, Janney Montgomery Scott LLC ("Janney") served as the Company's financial advisor in connection with the Proposed Transaction; however, the Registration Statement does not provide the fees Janney received or will receive for such services.  In addition, the Registration Statement fails to disclose whether Janney rendered services to First National in the two years preceding the Proposed Transaction.  Further, the Registration Statement discloses that Janney served as placement agent for Fincastle in connection with the issuance of its common stock in 2017, but omits the fees Janney received from the Company for serving as placement agent.

36.     Fourth, the Registration Statement omits material information concerning the process leading up to execution of the Merger Agreement.

37.     To start, the Registration Statement discloses that Fincastle executed non-disclosure agreements ("NDAs") with seven financial institutions.  However, it does not disclose whether those NDAs contained standstill provisions, and if so, whether those standstill provisions contained a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon execution of the Merger Agreement or still remain in effect.  Failure to

disclose the existence of DADW provisions creates the false impression that an interested party who signed an NDA could have made a superior proposal.  Rather, if those NDAs contained DADW provisions, the interested potential acquirers could only make a superior proposal by breaching their respective agreement, because in order to make the superior proposal, they would have to ask for a waiver.

38.     To that same effect, the Registration Statement states that Company A and Fincastle executed a non-binding indication of interest in July of 2020, yet it omits whether an NDA was also executed between the parties.

39.     Finally, the Registration Statement provides that on December 29, 2020, the Board narrowed down the sales process to consideration of two proposals, one of which was from First National – for merger consideration of $2.50 per share of Fincastle common stock.  Ultimately, the Board chose to negotiate a final indication of interest with First National, yet the Registration Statement does not disclose what that competing proposal was.  Disclosure of this information is crucial for Fincastle's shareholders in evaluating whether to vote in favor of the Proposed Transaction, because they are entitled to compare the two proposals for themselves.

40.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote her shares in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

### (Against Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

44.     The omission of information from a registration statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

45.     Defendants have issued the Registration Statement with the intention of soliciting the Company's public common stockholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement,

which fails to provide critical information regarding, amongst other things: (i) the financial projections for Fincastle; (ii) the financial analyses performed by RP; (iii) potential conflicts of interest; and (iv) the process leading up to execution of the Merger Agreement.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

47.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that RP reviewed and discussed its financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by RP, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the

sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review RP's analyses in connection with their receipt of the fairness opinion, question RP as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

49.     Fincastle is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

50.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Fincastle within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Fincastle, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

55.     In addition, as the Registration Statement sets forth at length, and as described

herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.      By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.      As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.      Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT III**

**(Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)**

59.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.      By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

61.      As alleged herein, the Individual Defendants breached their duty of

candor/disclosure by approving or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public shareholders.

62.     The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

63.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 22, 2021

**MONTEVERDE & ASSOCIATES PC**

*/s/* Juan E. Monteverde
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email:
jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*